```
                  UNITED STATES DISTRICT COURT
                   EASTERN DIVISION OF KENTUCKY
                   CENTRAL DIVISION at LEXINGTON
```

| | | |
|---|---|---|
| DAVID JONES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Action No. |
| v. | ) | 5:15-cv-350-JMH |
| | ) | |
| CLARK COUNTY, KENTUCKY, | ) | **MEMORANDUM OPINION** |
| et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | | |

\*\*\*

This matter is before the Court on the motion to dismiss of Defendants, Clark County, Kentucky and Frank Doyle. [DE 4]. Plaintiff having filed a response [DE 5], and Defendants having replied in further support of their motion [DE 8], this matter is ripe for decision. For the following reasons, the Court will grant Defendants' motion to dismiss.

I.

Plaintiff brings this putative class action complaint against Defendants Clark County, Kentucky and Clark County Jailer, Frank Doyle, individually, on behalf of all persons who, while incarcerated in the Clark County Detention Center (the "Jail"), were wrongfully assessed fees for their incarceration without due process of law. Plaintiff alleges that charging persons admitted to the Jail for the costs of their incarceration without an order of a sentencing court, including those individuals who are subsequently proven innocent, violates KRS 441.265 and the due

process rights of Plaintiff and putative class members under the Fourteenth Amendment of the United States Constitution. Plaintiff asserts state law claims for conspiracy, negligence, conversion, fraud, and violations of the Kentucky Constitution. Plaintiff also seeks a declaration that KRS 441.265 is unconstitutional and a return of all monies paid to Defendants.

Plaintiff Jones avers that he was arrested and admitted to the Jail on October 26, 2013, where he remained incarcerated until his release on December 15, 2014. Plaintiff further maintains that on April 2, 2015, the charges for which he was incarcerated were dismissed upon Plaintiff proving his innocence. After being released from the Jail, Plaintiff states that he received a written demand from the Jail to pay in excess of $4,000.00 in fees relating to his incarceration in the Jail. Plaintiff alleges that, to date, he has paid $20.00 of the bill, but on the advice of counsel, refuses to pay the remaining balance.

Defendants move to dismiss Plaintiff's claims in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the plaintiff's complaint. If the plaintiff fails to state a claim upon which

2

relief can be granted, a court may grant the motion to dismiss. Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) states that, at a minimum, a pleading should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that in order to survive a Rule 12(b)(6), a complaint need not contain "detailed factual allegations," but must present something more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Id.* at 555.

Although a court must accept as true all of the well-pleaded factual allegations contained in the complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570), courts are not bound to accept conclusory allegations as true. *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56 (citations omitted). Under this standard, only a claim which is "plausible on its face" will survive dismissal. *Id.* at 570; *Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 903 (6th Cir. 2009). "A claim is plausible when it contains facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."

3

*Ashcroft*, 556 U.S. at 678. If it appears beyond doubt that the plaintiff's complaint does not state facts sufficient to "state a claim to relief that is plausible on its face," then the claims must be dismissed. *Twombly,* 550 U.S. 544 at 570; *Weisbarth v. Geauga Park Dist.,* 499 F.3d 538, 542 (6th Cir. 2007).

III.

*42 U.S.C. § 1983 Claims*

In his Complaint, Plaintiff asserts claims under 42 U.S.C. § 1983 for alleged violations of his Fourteenth Amendment rights under the United States Constitution.[1] Section 1983 provides a private cause of action against those who, under color of state law, violate a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. A plaintiff may bring a § 1983 claim against persons in their individual or official capacity, or against a governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 168 (1985).

To establish a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must establish that: (1) he was deprived of a life, liberty or property interest secured by the Fourteenth Amendment to the United States Constitution by the state, and (2) the state did not afford adequate procedural rights prior to the deprivation of the protected interest. U.S. Const. amend. XIV;

---

[1] Because Plaintiff does not object to the dismissal of his Fourth Amendment claim, *see* Plaintiff's Response to Defendants' Motion to Dismiss at 1, the Court declines to address this claim and will dismiss it accordingly.

4

*see also Ky. Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). Absent either element, the § 1983 claim fails. *Thompson,* 490 U.S. at 460.

The law is clear that individuals have a property interest in their own money. *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 571–73 (1972). Thus, assuming Plaintiff has been deprived of his money,[2] as a threshold matter, Plaintiff must plead an underlying constitutional violation to state a claim for relief pursuant to § 1983, that is, that the state did not afford adequate procedural rights prior to the deprivation of his protected interest. Therefore, the initial question before the Court is whether charging inmates a fee for their incarceration without an order from a sentencing court, as Plaintiff alleges is required by KRS 441.265, and even though an inmate later proves his innocence, amounts to a violation of procedural due process under the Fourteenth Amendment. KRS 441.265 provides in its entirety as follows:

---

[2] In other similar cases involving the constitutionality of jail fees within the Sixth Circuit, the fees were automatically deducted from the inmates' canteen accounts. *Hodge v. Grayson Cty.*, No. 4:07-cv-P60-M, 2008 U.S. Dist. LEXIS 32295 (W.D. Ky. Apr. 17, 2008); *Harper v. Oldham Cty.*, No. 3:10-cv-P735-S, 2011 WL 1399771 (W.D. Ky. Apr. 13, 2011); *Whitaker v. Thornton*, No. 3:13-cv-P859-M, 2014 WL 585323 (W.D. Ky. Feb. 14, 2014); *Cole v. Warren Cty.*, No. 1:11-CV-00189, 2012 WL 1950419 (W.D. Ky. May 30, 2012). Here, unlike in the previously cited cases, Jones was billed after his release rather than automatically debited while incarcerated.

Required reimbursement by prisoner of costs of confinement; local policy of fee and expense rates; billing and collection methods.

(1) A prisoner in a county jail shall be required by the sentencing court to reimburse the county for expenses incurred by reason of the prisoner's confinement as set out in this section, except for good cause shown.

(2) (a) The jailer may adopt, with the approval of the county's governing body, a prisoner fee and expense reimbursement policy, which may include, but not be limited to, the following:

1. An administrative processing or booking fee;

2. A per diem for room and board of not more than fifty dollars ($50) per day or the actual per diem cost, whichever is less, for the entire period of time the prisoner is confined to the jail;

3. Actual charges for medical and dental treatment; and

4. Reimbursement for county property damaged or any injury caused by the prisoner while confined to the jail.

(b) Rates charged may be adjusted in accordance with the fee and expense reimbursement policy based upon the ability of the prisoner confined to the jail to pay, giving consideration to any legal obligation of the prisoner to support a spouse, minor children, or other dependents. The prisoner's interest in any jointly owned property and the income, assets, earnings, or other property owned by the prisoner's spouse or family shall not be used to determine a prisoner's ability to pay.

(3) The jailer or his designee may bill and attempt to collect any amount owed which remains unpaid. The governing body of the county may, upon the advice of the jailer, contract with one (1) or more public agencies or private vendors to perform this billing and collection. Within twelve (12) months after the date of the prisoner's release from confinement, the

6

county attorney, jailer, or the jailer's designee, may file a civil action to seek reimbursement from that prisoner for any amount owed which remains unpaid.

(4) Any fees or reimbursement received under this section shall be forwarded to the county treasurer for placement in the jail's budget.

(5) The governing body of the county may require a prisoner who is confined in the county jail to pay a reasonable fee, not exceeding actual cost, for any medical treatment or service received by the prisoner. However, no prisoner confined in the jail shall be denied any necessary medical care because of inability to pay.

(6) Payment of any required fees may be automatically deducted from the prisoner's property or canteen account. If the prisoner has no funds in his account, a deduction may be made creating a negative balance. If funds become available or if the prisoner reenters the jail at a later date, the fees may be deducted from the prisoner's property or canteen account.

(7) Prior to the prisoner's release, the jailer or his designee may work with the confined prisoner to create a reimbursement plan to be implemented upon the prisoner's release. At the end of the prisoner's incarceration, the prisoner shall be presented with a billing statement produced by the jailer or designee. After the prisoner's release, the jailer or his designee may, after negotiation with the prisoner, release the prisoner from all or part of the prisoner's repayment obligation if the jailer believes that the prisoner will be unable to pay the full amount due.

(8) No per diem shall be charged to any prisoner who is required to pay a work release fee pursuant to KRS 439.179, a prisoner that has been ordered to pay a reimbursement fee by the court pursuant to KRS 534.045, or that the Department of Corrections is financially responsible for housing.

(9) No medical reimbursement, except that provided for in KRS 441.045, shall be charged to any prisoner that the Department of Corrections is financially responsible for housing.

7

The precise question before the Court was examined and answered in the negative by Judge Bertelsman in *Sickles v. Campbell County*, which decision the Sixth Circuit affirmed. *Sickles v. Campbell Cty.*, 439 F. Supp. 2d 751, 755 (E.D. Ky. 2006) *aff'd,* 501 F.3d 726 (6th Cir. 2007). In *Sickles*, the money that pretrial detainees had on their person was confiscated upon detention and placed in canteen accounts, in addition to any money provided by relatives or friends, and the canteen accounts were debited a fee for booking and a per diem fee for housing. *Sickles*, 439 F. Supp. 2d at 755. Looking to KRS 411.265(6) (which provides for the automatic deduction of fees from a prisoner's account) and the definition of "prisoner" in KRS 441.005(3)(c)[3] (which includes not just convicted individuals, but any person confined and charged with an offense), Judge Bertelsman held that "the correct reading of [KRS 441.265] is that the fees may be imposed as soon as the prisoner is booked into the jail and may be periodically deducted from the prisoner's account as provided by local regulation." *Sickles*, 439 F. Supp. 2d at 755. The Court further concluded that "[s]ince the statute is valid, the inmate owes fees that begin to accrue immediately upon his or her being booked into the jail." *Id.* The reference to "sentencing court" in KRS 411.265(1),

---

[3] "Prisoner" is defined as "any person confined in jail pursuant to any code, ordinance, law, or statute of any unit of government and who is: (a) Charged with or convicted of an offense; or (b) Held for extradition or as a material witness; or (c) Confined for any other reason." KRS § 441.005(3).

according to Judge Bertelsman, is to allow the court to impose a judgment for any deficiency at sentencing which was not defrayed by automatic deduction. *Id.*

On appeal, the Sixth Circuit affirmed the district court's decision, stating as follows:

> May a municipal jail, consistent with the Due Process Clause of the Fourteenth Amendment, withhold a portion of an inmate's canteen-account in order to cover the costs of booking, room and board without providing the inmate with a hearing before it withholds the money. Yes, we hold, and accordingly we affirm the district court's rejection of this claim and two others.

*Sickles v. Campbell County*, 501 F. 3d 726, 728 (6th Cir. 2007). Analyzing the jail's practice of imposing fees in light of the *Mathews v. Eldridge* balancing test,[4] the Sixth Circuit explained that a predeprivation hearing was not required because: (1) the private interests at stake are "small in absolute and relative terms"; (2) the risk of erroneous deprivation is minor; (3) the potential benefits of additional safeguards,[5] including a

---

[4] In considering a due process claim, the Supreme Court has outlined three factors that courts must balance when determining what procedural process is owed, and when that process is due: (1) the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319 (1976).

[5] The grievance procedures available in *Sickles* included the fact that the inmates had notice of the collection fee procedures and of the inmates' rules and rights. *Sickles*, 439 F. Supp. 2d 751 (E.D. Ky. 2006) *aff'd,* 501 F.3d 726 (6th Cir. 2007).

9

predeprivation hearing, are few; and (4) the government's interests — sharing the costs of incarceration and further offender accountability — are substantial. *Id.* at 731 (citing *Mathews*, 424 U.S. 319 (1976)).

The Court finds that none of the *Mathews v. Eldridge* factors as applied here distinguish Plaintiff's case from *Sickles*. As to the first prong of *Mathews*, Plaintiff argues that the amount of money at stake exceeds the amount at issue in *Sickles*. However, Plaintiff has only been deprived of the $20.00 he has paid to Defendants, which is comparable to the amount of money at stake in *Sickles*. *Sickles*, 501 F.3d at 730. There is no allegation that Defendants have taken any additional action to collect the remaining balance from Plaintiff other than sending him the initial bill.

Looking to the second prong, as in *Sickles*, there is a minor risk of erroneous deprivation as the withholding of funds involves elementary accounting with little risk of error. *Id.* at 730-31. As Plaintiff alleges, the Jail's incarceration fee policy is non-discretionary as it applies to all persons confined in the Jail. Moreover, because Plaintiff was billed after being released, the risk of erroneous deprivation is arguably less than in *Sickles* where the plaintiffs were automatically debited while confined. The Court also finds the process set forth in KRS 441.265(3), which states that counties may file a civil action against a released

10

prisoner to collect any amount owed which remains unpaid, to constitute an adequate safeguard given the nature and weight of the private interests at stake. An additional protection, per KRS 441.265(7), is the opportunity for prisoners to negotiate with the jailer to be released from all or part of the repayment obligation, exist. Notably, as in *Sickles*, there is no allegation by Plaintiff that he challenged his repayment obligation through these grievance procedures nor an allegation that these procedures would be ineffective in protecting his due process rights. *Id*. at 731; *Parratt v. Taylor,* 451 U.S. 527, 543-44 (1981), *rev'd on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986)). As to the third *Mathews* factor — the government's interest — this Court finds, as others have found, that the government's interest in "sharing the costs of incarceration and furthering offender accountability ... are substantial." *Sickles,* 501 F.3d at 732.

Plaintiff argues his case is distinguishable from *Sickles* on the basis that he has proven his innocence, yet was billed for incarceration fees, whereas in *Sickles*, there is no indication whether any of the plaintiffs therein were subsequently found guilty or innocent. However, the Sixth Circuit addressed and rejected this argument in *Sickles* when it stated "to say that a sentencing court must do one thing (requiring reimbursement even after the inmate's release) is not to say that another government entity (the county jail) may not do another (collecting room-and-

11

board fees from inmates while they remain in jail)." *Sickles*, 501 F. 3d at 732. In other words, as this Court explained, "[i]f subsection (6) of [KRS 441.265] (which permits the fees to be "automatically deducted from the prisoner's property or canteen account,") is to be given any meaning, imposition of the fees cannot be delayed until sentencing. […] [T]he statutes contemplate imposition of the fees whether or not the inmate is ever sentenced." *Sickles*, 439 F. Supp. 2d at 755. Thus, if automatic collection of fees can occur without regard to the inmate being sentenced pursuant to *Sickles*, an inmate's conviction is not a prerequisite to the charging and imposing of fees under KRS 441.265. For this reason, Plaintiff's attempt to distinguish his case from *Sickles* fails. Without any contrary support for Plaintiff's interpretation of KRS 441.265, this Court finds *Sickles* to be controlling. *Sickles*, 439 F. Supp. 2d 751 (E.D. Ky. 2006) *aff'd,* 501 F.3d 726 (6th Cir. 2007).[6]

The Court also finds persuasive the decisions of the United States District Court for the Western District of Kentucky, which

---

[6] In further support of their argument that the order of a sentencing court is not required to impose fees on an inmate pursuant to KRS 441.265, Defendants cite *Cole v. Warren Cty.*, 2015 Ky. App. LEXIS 157 (Ky. App. Nov. 13, 2015), wherein the Court of Appeals of Kentucky interpreted KRS 441.265 "unambiguously permits the exact practice used by the [Warren County Jail]" of automatically deducting fees without the order from a sentencing court. However, recognizing that this decision is currently being appealed and, therefore, has not been conclusively ruled on by the Kentucky Supreme Court, we give some weight, rather than controlling weight, to the Court of Appeals decision. *Rutherford v. Columbia Gas*, 575 F.3d 616, 620 (6th Cir. 2009). The Court also looks to the decisions of the federal courts within the Sixth Circuit cited herein to help predict how the state's highest court will interpret KRS 441.265. *Id.*

12

have followed *Sickles* and agreed that the billing and collection of fees pursuant to KRS 441.265 does not violate the Due Process Clause when analyzing nearly identical claims to those raised in the instant case. *See Hodge v. Grayson Cty.*, No. 4:07-cv-P60, 2008 U.S. Dist. LEXIS 32295 (W.D. Ky. Apr. 17, 2008); *Harper v. Oldham Cty.*, No. 3:10-cv-P735, 2011 WL 1399771 (W.D. Ky. Apr. 13, 2011); *Whitaker v. Thornton*, No. 3:13-cv-P859, 2014 WL 585323 (W.D. Ky. Feb. 14, 2014); *Cole v. Warren Cty.*, No. 1:11-CV-00189, 2012 WL 1950419 (W.D. Ky. May 30, 2012).[7] For the same reasons stated above with respect to *Sickles*, the Court rejects Plaintiff's argument that these cases are inapplicable because the majority of the plaintiffs therein were convicted inmates. In *Harper*, the Western District of Kentucky explicitly recognized that one plaintiff was a pretrial detainee while the other was a convicted inmate, but proceeded to make no further distinction in its analysis regarding conviction status and ultimately concluded that "the case law in this circuit is clear that the Oldham County Jail was not required to provide Plaintiffs with a predeprivation hearing before assessing the per diem fees. As such, their Fourteenth Amendment procedural due process rights were not violated." *Harper*, 2011 WL 1399771 at *6. The Sixth Circuit

---

[7] The Court also notes that the Third and Fourth Circuits have held that the collection of fees from arrestees without a predeprivation hearing does not violate due process. *See Tillman v. Lebanon Cnty. Corr. Facility,* 221 F.3d 410 (3d Cir. 2000); *Slade v. Hampton Roads Reg'l Jail,* 407 F.3d 243 (4th Cir. 2005).

13

affirmed, acknowledging plaintiff's argument that jail fees should not apply to a pretrial detainee who had not been convicted of an offense, but failing to find plaintiff's conviction status as a distinguishing factor from *Sickles*. *Harper v. Oldham Cty. Jail*, 2011 U.S. App. LEXIS 26511 (6th Cir. Dec. 15, 2011).

As alleged in the Complaint, Plaintiff was a "prisoner" within the definition of KRS 441.005(3) (i.e. a "person confined in jail pursuant to any code, ordinance, law, or statute of any unit of government" who was "(a)charged with an offense" or "(c) confined for any other reason"), therefore, this Court holds that it was not unconstitutional to impose fees on Plaintiff without the order of a sentencing court and despite the fact that he later proved his innocence. For all of the reasons stated above, Plaintiff's § 1983 claim for the alleged violation of his Fourteenth Amendment rights fails to state a claim upon which relief may be granted, and accordingly, Plaintiff's § 1983 claim will be dismissed.

*Interpretation of KRS 441.265*

Plaintiff alleges that Defendants have misconstrued and violated KRS 441.265 by, in part, not requiring the order of a sentencing court before imposing fees on a prisoner. Plaintiff argues that the Court must look to the statute's legislative history, which would reveal that the statute "was amended prior to its enactment specifically to reposit such power in the sentencing court." [DE 5 at 3]. As discussed herein, the Court disagrees

14

with Plaintiff's interpretation that KRS 441.265 is ambiguous, therefore, it would be improper to refer to the legislative history of the statute. *Sickles*, in addition to other persuasive precedent within the Sixth Circuit, with which this Court agrees, hold that the order of a sentencing court is not required by KRS 441.265. *Sickles*, 439 F. Supp. 2d 751, 755 (E.D. Ky. 2006) *aff'd,* 501 F.3d 726 (6th Cir. 2007); *Hodge*, 2008 U.S. Dist. LEXIS 32295 (W.D. Ky. Apr. 17, 2008); *Harper*, 2011 WL 1399771 (W.D. Ky. Apr. 13, 2011); *Whitaker v*, 2014 WL 585323 (W.D. Ky. Feb. 14, 2014); *Cole*, 2012 WL 1950419 (W.D. Ky. May 30, 2012). Nevertheless, even if Defendants were misapplying and violating KRS 441.265, because the misapplication does not result in a violation of Plaintiff's due process rights, Plaintiff may not prevail on his § 1983 claim. *Hodge*, 2008 WL 1805505, at *4 (citing *Sickles*, 501 F.3d at 732).

*Substantive Due Process*

To the extent Plaintiff may also be alleging a substantive due process violation, he must assert either the "denial of a right, privilege, or immunity secured by the Constitution or federal statute other than [a] procedural claim," or an official act which "shocks the conscience." *Mertik v. Blalock,* 983 F.2d 1353, 1367–68 (6th Cir. 1993). Conduct that violates substantive due process is "'conduct intended to injure in some way unjustifiable by any government interest.'" *Mitchell v. McNeil,* 487 F.3d 374, 377 (6th Cir. 2007) (quoting *Cty. of Sacramento v.*

15

*Lewis,* 523 U.S. 833, 849 (1998)). The "shocks the conscience" standard is difficult to satisfy, as noted in Lewis, *supra,* 523 U.S. at 846 (internal citation omitted): "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" If the government action does not shock the conscience, that action does not violate substantive due process so long as it is rationally related to a legitimate state interest. *Valot v. Southeast Local Sch. Dist. Bd. of Educ.,* 107 F.3d 1220, 1228 (6th Cir. 1993).

Because Plaintiff pleads no facts that rise to the level of a substantive due process violation, that is, Defendants' action in collecting jail fees does not "shock the conscience," and because recouping costs from inmates is a legitimate state interest, any claim alleging a substantive due process violation is hereby dismissed.

*State Law Claims*

Plaintiff has also alleged state law claims against Defendants for negligence (Count II), civil conspiracy (Count III), conversion (Count IV), fraud (Count V), restitution in equity (Count VI), and violations of the Kentucky Constitution (Count VII). Defendants contend that because Plaintiff's claims pursuant to 42 U.S.C. § 1983 fail to state a claim upon which relief may be granted, this Court should decline jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(c).

Section 1367(c) of Title 28 of the United States Code provides, in pertinent part, as follows: "The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Here, given that the remaining claims are state law claims, and that this case is in its infancy, the Court finds that the balance of judicial economy, convenience, fairness, and comity direct the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, Plaintiffs' pendent state-law claims will be dismissed without prejudice.

*Declaratory Judgment and Injunctive Relief*

In his ninth cause of action, Plaintiff seeks a declaratory judgment and injunction enjoining Defendants from "any further pursuit of policies, procedures, customs or practices which resulted in persons being charged for the costs of their confinement absent an order of a sentencing court requiring that they reimburse the county for expenses incurred by reason of such person's confinement." [DE 1 at 9]. Since Plaintiff has not adequately pleaded his substantive claims as set forth above, the court has no basis upon which to issue declaratory relief, and therefore, Plaintiff's claim seeking a declaratory judgment is dismissed. *Int'l Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997).

Similarly, because Plaintiff cannot establish that in the absence of an injunction, he or anyone else will suffer irreparable harm with no remedy at law, an injunction is not appropriate here.

*Conclusion*

For the reasons articulated above, Plaintiff has failed to state a claim upon which relief may be granted. Accordingly, **IT IS HEREBY ORDERED** that:

(1) Defendants' Motion to Dismiss [DE 4] is **GRANTED**;

(2) All claims alleged in the Complaint [DE 1] against all Defendants are **DISMISSED WITH PREJUDICE**;

(3) All pending motions or requests for relief are **DENIED AS MOOT**;

(4) All deadlines and scheduled proceedings are **CONTINUED GENERALLY**;

(5) That the Clerk shall **STRIKE THIS MATTER FROM THE ACTIVE DOCKET**;

(6) That this Order is a **FINAL AND APPEABLE ORDER** and **THERE IS NO JUST CAUSE FOR DELAY.**

This the 11th day of March, 2016.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

Case: 5:15-cv-00350-JMH Doc #: 9 Filed: 03/11/16 Page: 19 of 19 - Page ID#: 80